# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| THREE GIRLS FISHING LLC and WESTERN WORLD INSURANCE GROUP, *as subrogee of Three Girls Fishing, LLC* | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Docket No. 2:23-cv-00175-NT<br>) |
| PAN AMERICAN POWER CORP., | )<br>) |
| Defendant/<br>Third-Party Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| TOMMY WOODWARD, INC.,<br>d/b/a COLUMBIA DIESEL<br>CASTINGS, et al., | )<br>)<br>)<br>) |
| Third-Party Defendants. | ) |

## ORDER ON MOTIONS TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

Before me is a series of motions to dismiss brought by Third-Party Defendant and Crossclaim Defendant Tommy Woodward, Inc., doing business as Columbia Diesel Castings ("**Columbia Diesel**"). For the reasons stated below, the motions to dismiss (ECF Nos. 39, 49, 67 & 69) are **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2020, Defendant and Third-Party Plaintiff Pan American Power Corp. ("**Pan Am**"), a Louisiana corporation,[1] contracted with Columbia Diesel, a Mississippi corporation,[2] to repair a crankshaft for an engine. Suppl. and Amending Third-Party Compl. ("**Pan Am Compl.**") ¶ 17 (ECF No. 48). Columbia Diesel operates a machine shop located in Columbia, Mississippi, its sole place of business. Decl. of Brandon Rodi in Supp. of Third-Party Def. Columbia Diesel's Mot. to Dismiss for Lack of Personal Jurisdiction ("**Rodi Decl.**") ¶ 2 (ECF No. 39-1).

Columbia Diesel performs most of its work for customers in Mississippi and eastern Louisiana. Rodi Decl. ¶ 11; Aff. of Edward Boudreau in Supp. of Opp'n to Columbia Diesel's Mot. to Dismiss ("**Boudreau Aff.**") ¶¶ 1, 11 (ECF No. 42-1). For the past ten years, Columbia Diesel has regularly done business with Pan Am providing crankshafts and other parts needed for Pan Am's work reconditioning and rebuilding diesel engines, and Columbia Diesel provides similar services for Pan Am's competitors. Boudreau Aff. ¶¶ 4, 12. Pan Am and its competitors distribute their reconditioned and rebuilt engines nationwide. Boudreau Aff. ¶¶ 11–15.

Columbia Diesel is not registered to do business in Maine, does not purchase goods or services in Maine, does not own property in Maine, does not have bank

---

[1] Defendant and Third-Party Plaintiff Pan American Power Corp. ("**Pan Am**") is a Louisiana corporation with a principal office in Covington, Louisiana. Am. Compl. ¶ 3 (ECF No. 9); Suppl. and Amending Third-Party Compl. ("**Pan Am Compl.**") ¶ 1 (ECF No. 48).

[2] Third-Party Defendant Tommy Woodward, Inc. doing business as Columbia Diesel Castings ("**Columbia Diesel**"), is a Mississippi corporation with its principal place of business in Columbia, Mississippi. Pan Am Compl. ¶ 3.

accounts, offices, or employees in Maine, and does not have a registered agent authorized to accept service of process in Maine. Rodi Decl. ¶¶ 4–5. Columbia Diesel has not contracted with any person or entity in Maine and does not exchange business calls or emails with any individuals or companies in Maine. Rodi Decl. ¶¶ 11–12. It has a website but does not advertise in Maine. Rodi Decl. ¶ 6.

Around March 1, 2020, Pan Am shipped the crankshaft to Columbia Diesel for repairs. Pan Am Compl. ¶¶ 17–19. Around March 11, 2020, Columbia Diesel shipped the crankshaft back to Pan Am's Louisiana office. Pan Am Compl. ¶ 20. No one at Columbia Diesel knew the crankshaft's origin or ultimate destination. Rodi Decl. ¶ 9. From there, Pan Am reconditioned the engine. Pan Am Compl. ¶¶ 26–29.

In June of 2020, Plaintiff Three Girls Fishing LLC ("**Three Girls**") needed an engine for its commercial fishing vessel based in Portland, Maine.[3] Am. Compl. ¶¶ 6–7, 10 (ECF No. 9); Pan Am Compl. ¶ 17. It contacted Pan Am to find one. Pan Am Compl. ¶ 10. Pan Am sold Three Girls the reconditioned engine with the crankshaft Columbia Diesel had repaired.[4] Am. Compl. ¶¶ 11, 14; Pan Am Compl. ¶¶ 12, 26, 28.

---

[3]    Plaintiff Three Girls Fishing LLC ("**Three Girls**") is a Maine limited liability company with a principal place of business in Portland, Maine. It has one member, Sarah Bruel, who resides in South Portland and has been a citizen of Maine since 2015. Am. Compl. ¶ 1 (ECF No. 9).

[4]    Third Party Defendant Fairhaven Shipyard Companies, Inc. ("**Fairhaven**") states the facts slightly differently. It says that "Pan Am. turned to Columbia Diesel when Three Girls, operating out of Maine, sought a reconditioned engine for its commercial fishing vessel." Third Party Def. Fairhaven's Opp'n to Third Party Def. Columbia Diesel's Mot. to Dismiss for Lack of Personal Jurisdiction ("**Fairhaven Opp'n**") 1–2 (ECF No. 76). It also acknowledges that it has no knowledge of the relationship between Pan Am and Columbia Diesel so it relies on those parties' facts. Fairhaven Opp'n 4 n.1. As recited above, those facts are that Columbia Diesel worked on the crankshaft for Pan Am in March of 2020 and Three Girls contacted Pan Am for a crankshaft in June of 2020, at which point Columbia Diesel was no longer involved. Am. Compl. ¶¶ 7–10; Pan Am Compl. ¶¶ 17–18; Def., Pan Am's, Opp'n to Third-Party Def., Columbia Diesel's, Mot. to Dismiss for Lack of Jurisdiction Ex. 1 ¶ 7 (ECF No. 42-1); Mot. of Third-Party Def./Crosscl. Def. Columbia Diesel to Dismiss for Lack of Personal Jurisdiction Ex. 1 ¶¶ 7–9 (ECF No. 39-1).

Third-Party Defendant Rockland Marine Corporation ("**Rockland Marine**")[5] installed the engine on Three Girls' vessel sometime after July 2020. Pan Am Compl. ¶ 31.

On July 24, 2022, the engine failed, and the vessel had to be towed back to port. Am. Compl. ¶ 16. One reason for the failure was that the "crankshaft counterweight became unsecured from the crankshaft fasteners, subsequently causing severe damage to the Engine's internals." Am. Compl. ¶ 17. In the spring of 2023, Three Girls and its insurer, Plaintiff Western World Insurance Group, filed suit against Pan Am for breach of contract, breach of express warranty, breach of the implied warranty of fitness for a particular purpose, breach of the implied warranty of merchantability, and negligence. Compl. ¶¶ 25–48 (ECF No. 1); Am. Compl. ¶¶ 25–48.

On November 16, 2023, Pan Am asserted a third-party complaint against Rockland Marine and Columbia Diesel seeking indemnification and contribution. Third Party Compl. ¶¶ 34–49 (ECF No. 28). Pan Am alleges that Columbia Diesel is to blame for Three Girls' engine problems for failing to ensure that the crankshaft was properly torqued. Pan Am Compl. ¶¶ 21–25.

Then Rockland Marine asserted a crossclaim against Columbia Diesel seeking indemnification and contribution. Third Party Answer of Rockland Marine to Compl. and Crosscls. Against Columbia Diesel ("**Rockland Marine Crosscls.**") (ECF No.

---

[5]     Third-Party Defendant Rockland Marine Corporation ("**Rockland Marine**") is a Maine corporation with its principal place of business in Rockland, Maine. Pan Am Compl. ¶ 3.

38). Rockland Marine also alleges that the engine failed because Columbia Diesel was negligent in repairing the crankshaft. Rockland Marine Crosscls. ¶¶ 4–5.

On January 26, 2024, Columbia Diesel filed a motion to dismiss Pan Am's third-party complaint and Rockland Marine's crossclaims. Mot. of Third-Party Def./Crosscl. Def. Columbia Diesel to Dismiss for Lack of Personal Jurisdiction ("**MTD**") 1 (ECF No. 39). A flurry of additional filings followed.

On April 23, 2024, Pan Am filed a supplemental third-party complaint to add Southworth-Milton Inc., doing business as Milton CAT ("**Milton CAT**"), and Fairhaven Shipyard Companies, Inc. ("**Fairhaven**") as third-party defendants.[6] Pan Am Compl. Fairhaven and Milton CAT performed services and repairs on Three Girls' vessel between the sale of the engine to Three Girls in 2020 and the engine failure in July of 2022. *See* Pan Am Compl. ¶¶ 46–80. On April 24, 2024, Columbia Diesel renewed its motion to dismiss. Renewed Mot. of Third-Party Def. Columbia Diesel to Dismiss for Lack of Personal Jurisdiction ("**Renewed MTD**") (ECF No. 49).

On June 20, 2024, Milton CAT filed an answer to Pan Am's third-party complaint and filed crossclaims against Columbia Diesel, Rockland Marine, and Fairhaven. Answer, Affirmative Defenses, Jury Demand, and Crosscls. of Third-Party Def. Milton CAT ¶¶ 4–11 (ECF No. 64). On June 25, 2024, Fairhaven filed its answer and asserted crossclaims against Columbia Diesel, Milton CAT, and Rockland

---

[6] Southworth-Milton Inc., doing business as Milton CAT ("**Milton CAT**"), is a New Hampshire corporation with its principal office located in Massachusetts. Pan Am Compl. ¶ 4. Fairhaven Shipyard Companies, Inc. is a Massachusetts corporation with its principal place of business in Massachusetts. Pan Am Compl. ¶ 5.

5

Marine and counterclaims against Pan Am for indemnification and contribution. Answer and Affirmative Defenses to Suppl. and Amending Third-Party Compl. and Jury Trial Demand of Pan Am, Fed. R. Civ. 14(c) Tender of Pan Am, and Am. Compl. and Jury Trial Demand of Three Girls and Western World Insurance Group as Subrogee of Three Girls and Crosscls. and Countercl. of Third-Party Def. Fairhaven (ECF No. 66). The next day, Columbia Diesel filed an additional motion to dismiss Fairhaven's and Milton CAT's crossclaims, incorporating the arguments it made in its previous motions to dismiss. Mot. of Crosscl. Def. Columbia Diesel to Dismiss the Crosscls. of Third-Party Defs. Milton CAT and Fairhaven for Lack of Personal Jurisdiction ("**MTD Milton CAT and Fairhaven's Crosscls.**") (ECF No. 67).

On June 27, 2024, Rockland Marine filed an amended answer to Pan Am's complaint, this time adding crossclaims against Fairhaven and Milton CAT as well as Columbia Diesel. Am. Answer of Third Party Rockland Marine to Suppl. and Amending Third Party Compl. and Crosscls. Against Fairhaven, Milton CAT, and Columbia Diesel (ECF No. 68). The next day, Columbia Diesel filed a second renewed motion to dismiss, incorporating its original arguments. Renewed Mot. of Third-Party Def. Columbia Diesel to Dismiss for Lack of Personal Jurisdiction ("**Second Renewed MTD**") (ECF No. 69).

6

## LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff[7] bears the burden of establishing personal jurisdiction over the defendant. *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 16 (1st Cir. 2019). Although there are several methods of resolving jurisdictional disputes, in a case such as this where neither party has requested an evidentiary hearing, I apply the "prima facie standard" to determine whether the plaintiff has met its burden. *Olympia Hotel Mgmt., LLC v. Bend Hotel Dev. Co.*, No. 2:20-cv-00136-NT, 2020 WL 6323719, at *4 (D. Me. Oct. 27, 2020). "On prima facie review, the plaintiffs' burden is to proffer evidence 'sufficient to support findings of all facts essential to personal jurisdiction' without relying on unsupported allegations." *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019) (quoting *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016)). The prima facie method requires the plaintiff to provide evidence that, when "taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). I take the facts from the pleadings and from supplemental filings in the record, such as affidavits, giving credence to the plaintiff's version of genuinely contested facts. *Id.* I may also consider undisputed facts that the defendant offers. *Id.*

---

[7] Here I ask whether the third-party plaintiff, Pan Am, and the parties bringing cross-claims have proven that personal jurisdiction exists over the third-party defendant, Columbia Diesel. *See Tom's of Me. v. Acme-Hardesty Co.*, 565 F. Supp. 2d 171, 174–75 (D. Me. 2008); *Lionbridge Techs., LLC v. Valley Forge Ins. Co.*, No. 20-10014-PBS, 2021 WL 12219366, at *2–3 (D. Mass. June 29, 2021).

## ANALYSIS

Columbia Diesel seeks dismissal of the eight claims against it—Pan Am's two third-party claims, Rockland Marine's two crossclaims, Milton CAT's two crossclaims, and Fairhaven's two crossclaims. MTD 1; Renewed MTD 1; MTD Milton CAT and Fairhaven's Crosscls. 1; Second Renewed MTD 1. It argues that I cannot exercise personal jurisdiction over it because it lacks legally sufficient contacts with Maine. MTD 1. Pan Am, Milton CAT, and Fairhaven[8] (together, the "**Claimants**") reply that there is adequate proof that Maine retains jurisdiction over Columbia Diesel or that there is at least a colorable case for personal jurisdiction such that there should be jurisdictional discovery. Def., Pan Am's, Opp'n to Third-Party Def., Columbia Diesel's, Mot. to Dismiss for Lack of Jurisdiction ("**Pan Am Opp'n**") 1 (ECF No. 42); Third-Party Def. Milton CAT's Opp'n to Mot. of Crosscl. Def. Columbia Diesel to Dismiss the Crosscls. of Third-Party Defs. Milton CAT and Fairhaven for Lack of Personal Jurisdiction 1–2 (ECF No. 71); Third-Party Def. Fairhaven's Opp'n to Third-Party Def. Columbia Diesel's Mot. to Dismiss for Lack of Personal Jurisdiction ("**Fairhaven Opp'n**") 1–2 (ECF No. 76).

### I.   Personal Jurisdiction

In diversity[9] cases, a party claiming personal jurisdiction must meet the requirements of the forum state's long-arm statute and the Due Process Clause of the

---

[8]     Rockland Marine did not file an opposition to Columbia Diesel's motions to dismiss.

[9]     Pan Am asserts that there is also admiralty and maritime jurisdiction in this case within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. Pan Am Compl. ¶ 6. Assuming this is correct, in admiralty cases, "personal jurisdiction analysis includes a twist not present in diversity cases, although ultimately there is no practical difference in the way in which the Court proceeds towards its determination." *Zeus Projects Ltd. v. Pérez y Cia. de P.R., Inc.*, 187 F.R.D.

8

Fourteenth Amendment. *Knox*, 914 F.3d at 690. Maine's long-arm statute provides that it "shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment." 14 M.R.S. § 704-A(1). "Because Maine's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, personal jurisdiction in Maine focuses on the due process inquiry." *Williams v. Dragone Classic Motor Cars*, No. 2:20-cv-00115-GZS, 2021 WL 1214498, at *1 (D. Me. Mar. 30, 2021).

The First Circuit has explained that:

> [t]he due process clause imposes several requirements on the exercise of personal jurisdiction over out-of-state defendants. First, the defendant must have sufficient "minimum contacts" with the state. For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts. For general jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state. Second, for either type of jurisdiction the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances.

*Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005). Here, only specific jurisdiction is at issue, so Pan Am must show three things: (1) that its claims are related to Columbia Diesel's contacts with Maine; (2) that Columbia Diesel's contacts

---

23, 28 (D.P.R. 1999). In admiralty cases, the Court's jurisdiction is national in scope, so the Due Process Clause of the Fifth Amendment, rather than the Fourteenth Amendment, applies. *Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.*, 310 F. Supp. 3d 295, 302 (D. Mass. 2018). The Fifth Amendment only requires a plaintiff to show that the defendant maintained adequate contacts with the United States, not the forum state. *Id.* But "the Court's power over a defendant is limited by the requirement that a defendant 'must be served pursuant to a federal statute or a Civil Rule.'" *Id.* (quoting *Zeus Projects*, 187 F.R.D. at 28). "[T]here is no federal statute providing for service on defendants in admiralty cases," but "Rule 4 of the Federal Rules of Civil Procedure provides that service may be accomplished on a defendant that is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Id.* (internal citations and quotation marks omitted). I must then look to Maine's long-arm statute to determine whether I may exercise personal jurisdiction over Columbia Diesel. I do so above in the context of diversity jurisdiction and the Fourteenth Amendment.

represent a purposeful availment of the privilege of doing business in Maine; and (3) that exercising jurisdiction over Columbia Diesel is reasonable. *See Levesque v. Iberdrola, S.A.*, 2:19-cv-00389-JDL, 2021 WL 3476092, at \*7 (D. Me. Aug. 6, 2021) ("[T]his circuit divides the constitutional analysis into three categories: relatedness, purposeful availment, and reasonableness."). All three requirements must be met. *PREP Tours*, 913 F.3d at 17.

### A. Relatedness

Relatedness requires the plaintiff to show a "demonstrable nexus" between its claim and the defendant's forum-based activities such that the action arises directly out of the defendant's specific contacts with the forum state. *Cappello v. Rest. Depot, LLC*, 89 F.4th 238, 245 (1st Cir. 2023); *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 66 (1st Cir. 2014). This "is a flexible, relaxed standard." *C.W. Downer*, 771 F.3d at 66 (quoting *Adelson v. Hananel*, 652 F.3d 75, 81 (1st Cir. 2011)).

However, the relatedness requirement is not an "open door" and instead "requires a showing of a material connection." *Harlow*, 432 F.3d at 61. In tort cases, the inquiry focuses on the "causal" nexus between the cause of action and defendant's contacts. *See Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 260–61 (1st Cir. 2022); *Harlow*, 432 F.3d at 60–61. The question is "whether the defendant's in-forum conduct caused the injury or gave rise to the cause of action." *Hunt v. Hunt*, 512 F. Supp. 3d 39, 60 (D. Me. 2020). This requires a showing of a material, rather than an attenuated and indirect, connection between the cause of action and the defendant's forum-state contacts. *Harlow*, 432 F.3d at 61. The analysis begins by identifying the

10

alleged contacts, as there can be no nexus between the contacts and the claims in the complaint if no contacts exist in the first place. *Hunt*, 512 F. Supp. 3d at 59.

The parties disagree on the extent of Columbia Diesel's forum-based contacts. The Claimants argue that the engine failure arises out of Columbia Diesel's forum-based conduct because it repaired the crankshaft for Pan Am, which sells rebuilt engines across the United States, including Maine. Pan Am Opp'n 8; Fairhaven Opp'n 8–10. They further point out that Columbia Diesel also did engine repairs for other companies that market and distribute nationally. Pan Am Opp'n 8; Fairhaven Opp'n 10–11. As Columbia Diesel sees it, it performed all the repair work in Mississippi and sent the fixed crankshaft to Pan Am in Louisiana, which later delivered it to Three Girls in Maine. MTD 7. It argues that the indemnification and contribution claims hinge on the allegedly negligent installation of the crankshaft, that the installation occurred in Mississippi, and that there was no repair work done in Maine. Reply in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction of Third-Party Def./Crosscl. Def. Columbia Diesel 5 (ECF No. 43).

Columbia Diesel's argument essentially falls under the First Circuit line of cases holding that, in analyzing some tort claims, "an in-forum effect of an extra-forum breach" is "inadequate to support a finding of relatedness." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 291 (1st Cir. 1999). *Old United Casualty Company v. Flowers Boatworks* illustrates the point. In *Flowers Boatworks*, a New York consumer commissioned a Maine boatbuilder to build a boat with underwater lights provided by a Florida manufacturer. *Old United Cas. Co. v.*

11

*Flowers Boatworks*, No. 2:15-cv-43-DBH, 2016 WL 1948873, at *1 (D. Me. May 3, 2016). After the boat sank in New York, allegedly due to a problem with the lights, the consumer's boat insurer sued the Florida-based manufacturer of the underwater lights for negligence, breach of warranty, and strict liability. *Id*. This Court found that the plaintiff had not made out the prima facie showing of relatedness to establish personal jurisdiction in Maine because, although "the sale and installation of the alleged defective product in Maine" gave rise to the lawsuit, "if the product was defective, that tortious conduct occurred in Florida where the lights [were] manufactured." *Id*. at *4.

The Court in *Flowers Boatworks* recognized the difference between cases where there is an "in-forum effect of an extra-forum breach" and cases where the introduction of a product into the "stream of commerce" elsewhere leads to an injury in the forum. "[N]either the Supreme Court nor the Court of Appeals for the First Circuit has expressed concern about the causal link in cases analyzing the stream-of-commerce theory of personal jurisdiction. Rather, in these cases, the jurisdictional hitch comes from the requirement of purposeful availment." *Flowers Boatworks*, 2016 WL 1948873, at *4.

As in *Flowers Boatworks*, I cannot conclude that the Claimants have demonstrated a prima facie showing that Columbia Diesel's contacts with Maine are related to the claims in this case under the "in-forum effect of an extra-forum breach" line of cases. They have not shown that Columbia Diesel engaged in any activity in Maine that led to the engine failure. Although the failure to establish relatedness

12

would otherwise doom personal jurisdiction over Columbia Diesel, as in *Flowers Boatworks*, I go on to consider the purposeful availment factor, because the Claimants contend that this is a stream of commerce case.[10]

### B. Purposeful Availment

Specific jurisdiction exists where the defendant "purposefully availed itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 28 (1st Cir. 2008) (internal quotation marks omitted); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021). "The purposeful availment prong represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." *C.W. Downer*, 771 F.3d at 66 (internal quotation marks omitted). "The flip side of this deal, however, is that when the out-of-forum defendant has not 'manifestly availed himself of the privilege of conducting business there,' it would be 'unreasonable to require the defendant to submit to the burdens of litigation in that forum.'" *PREP Tours*, 913 F.3d at 19 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

---

[10]   I note that I have my doubts about whether this is a stream of commerce case at all. In a more typical case like *Flowers Boatworks*, the entity challenging jurisdiction is a manufacturer who made some efforts to have their product sold broadly across the country. Here, Columbia Diesel was not making products that they were trying to sell across the country; they were performing services by repairing a crankshaft that someone else made that was later put in an engine that someone else sold.

13

"The cornerstones of this inquiry are voluntariness and foreseeability." *C.W. Downer*, 771 F.3d at 66. Voluntariness requires that the defendant's in-forum contacts are of its own making and not based on another party's unilateral actions. *Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 163 (1st Cir. 2022); *PREP Tours*, 913 F.3d at 20. Foreseeability means that "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (internal quotation marks omitted). This puts "the emphasis on the defendant's intentions and prohibits jurisdiction based on random, fortuitous, or attenuated contacts." *C.W. Downer*, 771 F.3d at 66 (internal quotation marks omitted).

"In addition to a defendant's specific attempts to target the forum state, a defendant's regular flow or regular course of sales in the forum can demonstrate purposeful availment, too." *Rodríguez-Rivera*, 43 F.4th at 163 (internal citations and quotation marks omitted). Merely placing a product into the stream of commerce and being aware it could end up in the forum state alone is not enough to meet the purposeful availment prong. *Id.* But "additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State," such as using a distributor who serves as the sales agent in the forum to market a product. *Id.* Other examples of "additional conduct" that First Circuit courts have considered for the purposeful availment prong include:

- Generating "not insubstantial" revenue from customers in the forum. *Id.* at 164; *see Flowers Boatworks*, 2016 WL 1948873, at *6.
- Directly shipping products to the forum or contracting with distributors or companies to sell products deliberately and specifically in the forum state.

14

> *Rodríguez-Rivera*, 43 F.4th at 164–65; *Jackson v. Sunset Ladder Co.*, No. 1:15-cv-00114-GZS, 2015 WL 7451179, at *6 (D. Me. Nov. 23, 2015).

- Marketing the product in the forum directly or through a distributor. *Ford*, 592 U.S. at 365; *Rodríguez-Rivera*, 43 F.4th at 165; *Knox*, 914 F.3d at 692.

- Directly building relationships with purchasers in the forum state. *Ford*, 592 U.S. at 365; *Rodríguez-Rivera*, 43 F.4th at 165; *Knox*, 914 F.3d at 693.

- Communicating with people or entities in the forum. *Rodríguez-Rivera*, 43 F.4th at 165.

- Maintaining a website that sells or renders services online rather than being primarily informational. *Kuan Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 60 (1st Cir. 2020); *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8 (1st Cir. 2018); *Flowers Boatworks*, 2016 WL 1948873, at *7.

- Physical presence in the forum. *Flowers Boatworks*, 2016 WL 1948873, at *6.

- Controlling or approving customers rather than having intervening actors like distributors taking the products to unforeseeable markets. *See Rodríguez-Rivera*, 43 F.4th at 165; *Plixer*, 905 F.3d at 8.

Rather than relying on a specific factor, "[t]his Court makes the purposeful availment determination by considering the nature and character of [Columbia Diesel]'s contacts with Maine as a whole." *Jackson*, 2015 WL 7451179, at *6.

Columbia Diesel has not purposefully availed itself of the privileges of doing business in Maine. It maintains no office or employees in Maine. It does not communicate with anyone in Maine, much less maintain a relationship with any customers in Maine by providing after-purchase (or, in this case, after-repair) services. Nor is there evidence that Columbia Diesel generated any revenue from customers in Maine. And although Columbia Diesel maintains a website, the Claimants have not shown that it was anything but informational.

15

The Claimants counter that it was reasonably foreseeable that Columbia Diesel's reconditioned engine parts would end up in Maine because it is affiliated with Pan Am and other entities who market and distribute their products nationally, including in Maine. Pan Am Opp'n 9; Fairhaven Opp'n 11–12; Boudreau Aff. ¶¶ 11–15. Working with a distributor that targets the forum state can indicate that a defendant has the intent necessary to satisfy the purposeful availment prong. *See, e.g.*, *Rodríguez-Rivera*, 43 F.4th at 164–65. However, the defendant must still have a forum connection strong enough so that exercising jurisdiction is voluntary and foreseeable. *See Knox*, 914 F.3d at 692.

Pan Am relies on *Unicomp, Inc. v. Harcros Pigments, Inc.*, 994 F. Supp. 24 (D. Me. 1998), for the proposition that "maintaining a distribution center in a geographic region is sufficient to demonstrate that a manufacturer targets or seeks to serve a state in that region." Pan Am Opp'n 10; *see also* Fairhaven Opp'n 11. In *Unicomp*, the manufacturer defendant specifically kept multiple distributors in New England and the mid-Atlantic region and knew that these distributors sold in Maine and solicited business for the defendant in Maine. 994 F. Supp. at 27. *Unicomp* merely reinforces the point that there needs to be something evincing the defendant's intent to target the forum state.

That intent is missing here. Rather than selecting partners in the New England area, Columbia Diesel mostly contracted with companies based in Mississippi and eastern Louisiana. Rodi Decl. ¶ 11. While those companies may have distributed their products nationally, there is nothing tying Columbia Diesel to Maine

16

other than the fact that the engine ended up there. This case is distinguishable from other stream of commerce cases that the Claimants cite because, unlike a typical case where a manufacturer uses a distributor to send out its products, Pan Am contacted Columbia Diesel to perform repair work. The distribution of the rebuilt engine containing the part that Columbia Diesel had repaired occurred months later without any involvement from or benefit to Columbia Diesel. In fact, Columbia Diesel had no knowledge of where the engine was going to end up when it repaired the crankshaft. It was Pan Am's later unilateral action that brought the engine to Maine. Columbia Diesel's only connection to Maine is its repair work for companies that distribute repaired engines nationally. Because "the mere placement of a product into the stream of commerce with the awareness that it could end up in a forum state, without more, is not enough to show purposeful availment," *Rodríguez-Rivera*, 43 F.4th at 163, I cannot find that Columbia Diesel purposefully availed itself of the privilege of conducting business in Maine.

## C. Reasonableness

The third prong required to establish personal jurisdiction is reasonableness, which is assessed by considering the following "gestalt factors":

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Harlow*, 432 F.3d at 67 (quoting *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992)).[11] Because I have already found that Columbia Diesel did not purposefully avail itself of the privileges of doing business in Maine, I need not evaluate reasonableness. *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 122 (1st Cir. 2022) ("The plaintiff must carry the devoir of persuasion on all three of these elements, and the plaintiff's failure as to any one of them defenestrates its claim of specific jurisdiction."); *Amburgey v. Atomic Ski USA, Inc.*, No. 2:06–CV–149–GZS, 2007 WL 1464380, at *4 (D. Me. May 17, 2007). Pan Am has failed to make the prima facie showing that this Court has personal jurisdiction over Columbia Diesel.

## II.   Jurisdictional Discovery

At the end of its opposition, Pan Am states: "To the extent the Court is unable to reach a finding as to the affirmative proof of personal jurisdiction, Pan Am respectfully requests that it be allowed to conduct jurisdictional discovery, as attached hereto as Exhibit B . . . ." Pan Am Opp'n at 14; *see also* Fairhaven Opp'n 2. Exhibit B comprises fourteen interrogatories and twenty-two requests for production to Columbia Diesel.[12] Pan Am Opp'n, Ex. B (ECF No. 42-2).

---

[11] The reasonableness prong is assessed on a sliding scale. *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 40 (1st Cir. 2016). The weaker the plaintiff's showing on the relatedness and purposeful availment prongs, the less a defendant needs to show for unreasonableness to defeat jurisdiction. *Id.* The reverse is also true: if the plaintiff makes a strong showing on the first two prongs, "the defendant 'carries the burden of defeating jurisdiction with a similarly strong showing of unfairness.'" *Olympia Hotel Mgmt., LLC v. Bend Hotel Dev. Co.*, No. 2:20-cv-00136-NT, 2020 WL 6323719, at *10 (D. Me. Oct. 27, 2020) (quoting *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 71 (1st Cir. 2014)).

[12] Pan Am claims that jurisdictional discovery will help clarify five issues:
1) whether Columbia Diesel, through its services, distributes or seeks to distribute engine parts it has serviced to Maine or other neighboring states via offshore vessels;

18

In this case, I need not address Pan Am's jurisdictional discovery request because I am not "unable to reach a finding" on whether Pan Am has affirmatively proved personal jurisdiction. I reached a finding that Pan Am failed to make the prima facie showing that this Court has personal jurisdiction over Columbia Diesel. Although not necessary, I briefly address Pan Am's jurisdictional discovery request.

The First Circuit has "long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery.' " *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001) (quoting *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997)). But "that entitlement is not absolute." *Id.* To succeed in a request for jurisdictional discovery, a plaintiff must "present facts to the court which show why jurisdiction would be found if discovery were permitted." *Franchini v. Bangor Publ'g Co.*, No. 1:18-cv-00015-GZS, 2019 WL 4228885, at *2 (D. Me. Sept. 5, 2019) (quoting *Swiss Am. Bank*, 274 F.3d at 626). Even when a plaintiff presents a colorable claim for personal jurisdiction and is diligent in its "obligation to present facts" showing why jurisdiction would be found if the court permits discovery, "the district court still has 'broad

---

2) the methods in which Columbia Diesel targets or seeks to service different regions of the country; 3) the revenues Columbia Diesel derives from the sale of its repaired engine parts to products reaching the State of Maine; 4) whether Columbia Diesel provides its services for businesses besides Pan Am that operate in Maine; and 5) the corporate affiliations and control mechanisms that Columbia Diesel maintains with its business partners like Pan Am, all of whom sell and distribute products with Columbia Diesel's repair work both domestically and internationally.

Pan Am Opp'n 11.

discretion to decide whether discovery is required.'" *Swiss Am. Bank*, 274 F.3d at 626–27 (quoting *Crocker v. Hilton Int'l Barb., Ltd.,* 976 F.2d 797, 801 (1st Cir. 1992)).

Pan Am's showing falls far short of a colorable claim of personal jurisdiction, and Pan Am has not provided facts to show why discovery would change that outcome. At most, it offers a hope that jurisdictional discovery might uncover facts that Columbia Diesel actually has strong ties to Maine where none have otherwise emerged. Given the "dearth of contacts" that Columbia Diesel has with Maine, "discovery is unlikely to be useful in establishing jurisdiction." *See Amburgey*, 2007 WL 1464380, at *4. Pan Am's request for a jurisdictional fishing expedition is denied.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Third-Party Defendant Columbia Diesel's motions to dismiss for lack of personal jurisdiction (ECF Nos. 39, 49, 67 & 69).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 12th day of August, 2024.